### MATKINS et al. v. CITY OF MONROE.*
### No. 4319.

Court of Appeal of Louisiana. Second Circuit.

Dec. 16, 1932.

---

Redmond & Thompson, of Monroe, for appellants.

H. H. Russell, of Monroe, for appellee.

PALMER, J.

Plaintiff sues individually, and for the use and benefit of his minor son, Thomas F. Matkins, to recover damages for personal injuries and property losses sustained by him, and for personal injuries sustained by his son, as a result of a collision between a truck driven by plaintiff and a street car owned and operated by the defendant city within its corporate limits. The amount of damages sought for plaintiff, personally, is $495, and the amount he seeks for the use and benefit of his said minor son is $10,000.

For cause of action plaintiff has made substantially the following allegations: That on or about April 26, 1930, he and his said minor son, while traveling south on Lee avenue in the city of Monroe, in a Ford truck loaded with stave timbers or bolts, on their way to the plant of the Louisville Cooperage Company, located in the southern part of the city, came to the intersection of Lee and Forest avenues, at which point they started to turn across the street car track to the east on Forest avenue, and when their truck had reached the tracks of the street car line, the engine suddenly died, stopping the truck; that at this time there was approaching from the south, traveling north on Lee avenue, a street car operated by the defendant company, which was about 200 or more feet distant; that when his truck stopped, he made every effort to start it, and before he could do anything, the street car, after having failed to stop, slow down, or slacken its speed at the intersection, increased its speed and ran the left front corner of the street car against the right front corner of his truck, knocking the street car from the track and turning the truck around; that it was the duty of the defendant, in approaching this intersection, to stop, slow down, or slacken his speed, which he failed to do, but instead increased it; that notwithstanding the street car motorman had a clear view of plaintiff's truck, he continued in his travels until the collision occurred, although plaintiff's truck had stalled at or on the track and he and his said son were rendered helpless to avoid the accident.

He further alleges that at the time of the collision, defendant's street car was being op-erated in a reckless, negligent, and careless manner, and at an excessive rate of speed, and that notwithstanding his truck was heavily loaded and standing still at the time of the collision, it was knocked into a reversed position and the street car was knocked from the track, thereafter traveling approximately 14 feet before coming to a stop, all as a result of the excessive speed at which the street car was running; that after seeing the street car was not going to stop or slow down at the intersection, as required by defendant city, but instead increased its speed, he and his son had no opportunity to get off the truck and out of the way to avoid injury as a result of the collision; that as a result of his truck being struck by the street car with terrific force, his son was thrown underneath the street car and in front of the wheels, so that his left leg was severed from his body above the knee and, in addition, received other injuries and bruises; that in the collision the truck was damaged, and that he (plaintiff) received injuries to his arm, hand, jaw, and head, rendering him unconscious; that if the operator of the street car had used ordinary care, reason, or diligence by placing the car under control, he could have stopped before striking the truck and before causing the said damages to himself and his said minor son.

The amount of $10,000 damages claimed for his minor son is to cover the loss of his leg and decreased earning capacity and for bruises to his face, head, arm, and body, and for physical and mental pain, anguish, and suffering, and for further deprivation of pleasure and the embarrassment caused from being crippled or one-legged. The amount of $495 claimed personally by plaintiff is to cover alleged damages to his truck and to cover the amount paid the doctors for medical attention to his son, and for his son's sanitarium bills, and for injury to his own person, and for physical and mental pain suffered therefrom.

Defendant, while admitting the collision and in the main admitting the injuries alleged, denies that they were occasioned through any fault or negligence on its part. In fact, it denies all the charges of negligence made against it. It makes substantially the following allegations: That when the motortruck being driven by plaintiff was approaching the intersection of Lee and Forest avenues from the north, traveling south on Lee avenue, that its street car was at that time approaching the same intersection from the south, traveling north on the same avenue; that when the street car approached the south line of the intersection, the operator brought the car to a safety stop and then started across the intersection, at which time the motortruck was stopped, headed south and in a position where it was entirely clear of the street car track; that the street car proceeded slowly across the intersection and had completely crossed it, having reached a point

where the front end of the street car was more than 12 feet north of the north line of Forest avenue, at which time plaintiff suddenly started his motor truck, turning to his left, that is, in an easterly direction, as though to cross into Forest avenue on the east, and in doing so, the right front corner of the motor-truck struck the left front corner of the street car, the impact resulting in derailing the street car, knocking it at an angle to the track, after which the car traveled a short distance.

Defendant further avers that the street car was within a few feet of the truck before plaintiff suddenly started the truck, resulting in the collision; that in approaching the intersection in question the motorman brought the car to a safety stop and, upon discovering that there was no traffic approaching from either end of Forest avenue, proceeded across the intersection at a reasonable speed, at which time plaintiff's truck, still facing south on Lee avenue, was standing still at a sufficient distance from the track for the street car to pass in safety, and that plaintiff, when the street car was within a few feet of where he was stopped, suddenly started the truck moving, turning to the left, running the right front corner of the truck into the left front corner of the street car; that neither at the time plaintiff stopped his truck on the north side of the intersection, nor when he suddenly started the same and turned to the left, did he give any warning as to what he intended to do; and that the collision was the direct result of plaintiff's negligence, in which defendant was in no manner at fault.

The lower court rejected the demands of plaintiff at his costs. From that judgment he prosecutes this appeal.

## Opinion.

There are two very distinct lines of testimony submitted in this case—one by the plaintiff and his witnesses, and the other by the defendant's witnesses. Plaintiff and his witnesses are thoroughly in accord in their testimony as to how the collision occurred, and likewise all of defendant's witnesses are in full accord as to how the collision occurred. But the two lines of testimony on practically all of the material points are diametrically opposed, the one to the other. If plaintiff and his witnesses are correct, then it is a clear case of liability and he should be entitled to recover adequate damages personally and for the use and benefit of his minor son; while, on the other hand, if the defendant's witnesses are correct, clearly the defendant was not at fault and plaintiff's claims must fall.

The facts show that Lee avenue runs north and south, and that Forest avenue runs east and west. The point where Forest avenue leaves Lee avenue on the east is slightly north of the point where Forest avenue enters Lee avenue from the west; that is, if Forest avenue, approaching from the west, extended straight across Lee avenue, the point where Forest would leave Lee would be several feet south of the point where it actually leaves it. This makes a rather wide intersection. There is located at the southwest corner of this intersection a brick building; to the northwest, there is a high school grounds and building; to the southeast there is a fire station; and to the northeast there is a filling station. Because of this brick building at the southwest corner, it is necessary for street cars to approach this intersection cautiously, lest traffic might be approaching on Forest from the west and on account of this building could not be seen until near, or practically at the intersection. Therefore the defendant requires its motormen, when reaching this intersection, to come to what it called a "safety" stop, or, in other words, to reduce the speed of the car to where a stop may be made within a very few feet, in order to avoid collisions with traffic that may be approaching on Forest avenue from the west.

Plaintiff contends, and so testified, that he was traveling south on Lee avenue and, before reaching the intersection in question, held out his hand, indicating a left turn into the east end of Forest avenue, continuing to travel until he reached the west rail of the street car track, near the center of the intersection, at which time his truck engine died, thereby stopping his truck; that at this time the street car, having failed to make the safety stop on the south side of the intersection, as required by the defendant, was about 140 feet away, and then, increasing its speed to an excessive rate, continued to come forward until it ran into his truck, that is, the left front corner of the street car ran into the right front corner of his truck, and caused the injuries complained of; that he and his son had no opportunity to get out of the truck and avoid the injuries, on account of the rapid speed being made by the street car, while the motorman could have stopped the car, even though traveling at an excessive rate of speed, before colliding with the truck if he had used proper care and applied the means at his hand, which he did not do; that persons traveling Lee avenue in either direction at this point had an unobstructed view for a considerable distance either way; and that the motorman saw him when he started across the track, saw his truck as it stalled or stopped, and notwithstanding this, continued to crowd upon him at a rapid rate of speed without making any effort to avoid the collision, which could have been avoided had the motorman used due care.

Plaintiff was thoroughly corroborated in this version of the collision by his said minor son and by a young man who operated the filling station at the northeast corner of the intersection, and by a pedestrian who was

passing at or near the point of the collision at the time it occurred. Each of the witnesses apparently gave straightforward testimony.

On the other hand, the motorman operating defendant's car testified that as he approached this intersection from the south, he observed the defendant's requirements and came to a safety stop, that is, slowed his car down to where it could have been stopped within a few feet; that after discovering no approaching cars from either end of Forest avenue, he entered the intersection and picked up his speed; that at this time plaintiff and his son were seated in the truck which was stopped at the white line on the north side of the intersection several feet to the west of the street car line, more than sufficient distance for the street car to pass, as if they were waiting for the street car to come by before turning into the east end of Forest avenue; that plaintiff at this time was looking back as though he was talking to some one, or looking at the staves and bolts on the truck; that when he was within 10 or 12 feet of the point where the collision occurred, which was on the north side of the intersection, plaintiff suddenly started his truck moving, without warning, and ran the right front corner of it directly into the left front corner of the street car, causing the collision; that when he saw plaintiff had started the truck, he applied all the means at his hand to avoid the collision, but could not avoid it.

The motorman was corroborated in his testimony almost in its entirety by a passenger on the street car, who also happened to be a motorman, but not then on duty. He was partially corroborated by a lady passenger on the street car. He was also corroborated by two firemen standing at the fire station near the place of the collision, who say they saw the accident from the beginning to the end. These witnesses also gave testimony apparently straightforward and convincing.

It is clear from these general recitals of the facts that if we accept the testimony of plaintiff and his witnesses, a clear case of liability has been established. It shows that he gave due and proper notice of his intention to turn into the east end of Forest avenue, at the proper place for the turn, and arrived at the west rail of the track preparatory to crossing it at a time when the street car was at least 140 feet away, which, if it had been traveling at a reasonable rate of speed, could not have possibly collided with the truck before the truck would have safely crossed; that instead of crossing, the truck stalled or stopped, and yet the street car, with an increased speed, continued to come forward without the motorman apparently attempting to stop, until he ran into the truck. If that theory is correct, plaintiff was not negligent when he attempted to cross the track, for the street car was a sufficient distance away to warrant him in believing the crossing could be made in perfect safety; that even if he was somewhat negligent, the motorman clearly had the last clear chance because he had 140 feet to travel after seeing that the truck had come to a stop on or at the west rail of the track.

On the other hand, it is equally clear that, if we take the testimony of the motorman and the other witnesses for defendant, there was no actionable negligence on the part of defendant, but the collision was the result of plaintiff's own carelessness, for defendant's testimony shows that as the motorman entered the intersection, he was traveling at a safe rate of speed, at which time plaintiff, who could clearly see him coming, had stopped his truck at a safe distance to the west of the track as though he was waiting for the street car to pass, and without warning or notice, while looking behind him, and when the street car was within 10 or 12 feet of the point where the collision occurred, suddenly started his truck moving as if to cross the track and ran the right front corner of his truck into the left front corner of the street car, at which time the motorman applied all the means at his command to avert the accident, but could not avert it.

As we have stated, the two points of view, and the testimony given by each set of witnesses, are diametrically opposed, the one to the other. Certainly one or the other is incorrect.

■■ It is argued by counsel for plaintiff that because all of the defendant's witnesses, except the lady passenger on the street car, were employees of defendant, they had an interest in the case, and therefore the testimony offered by plaintiff should outweigh that of the defendant. We are not impressed with the soundness of that contention. However, we can appreciate that the motorman in charge of this street car would have an interest that could have influenced his testimony, since his skill as a motorman was involved, just as plaintiff and his minor son might have been influenced by their interest, because they are the parties seeking the recoveries; but the court would be going a long way to hold that people, who are reputable as far as we know and who happen to be employees of a party litigant in some line or department entirely disassociated from the operations involved, would color their testimony in order to help their employer in a lawsuit. We do not feel justified, especially considering the character of the testimony in this case, to so hold. We sympathize deeply with plaintiff's young son, who is crippled for life as a result of this unfortunate collision, but the court is faced with the responsibility of following the law. A decision of the case turns entirely on a question of fact. The lower court found the facts against plaintiff, and while we have weighed and considered the testimony to the fullest extent, with the view of determining if there be any manifest error in the lower

court's finding, we can but conclude that there is not.

Accordingly, the judgment of the lower court is affirmed; appellant to pay all cost of appeal.

DREW, J., dissents.